Dear Representative Steinmetz:
This letter is issued in response to your request for an opinion on the following questions:
 1. May a fire protection district charge and collect from an insurance company when the district provides ambulance service for a resident of the district and the resident owns an insurance policy which will pay for ambulance services?
 2. May a fire protection district charge and collect from insurance companies, or other sources, for answering calls outside of its boundaries?
 3. Will the answers to questions number 1 and 2 be different if the property owners of the district are assessed a tax of 15 cents per $100 assessed valuation to pay for ambulance services?
 4. Will the answer to question number 1 (in light of question 3) be different if the person receiving the ambulance service is not a resident of the district but receives the service of the fire protection district's ambulance when his injury is suffered while in the district?
In addition to their other powers and duties, fire protection districts are authorized to provide emergency ambulance service, and to levy a tax not to exceed fifteen cents on the $100 assessed valuation to be used exclusively to supply funds for the operation of such service, if the majority of the voters within the district approve the proposition. See §§ 321.225
and 321.620, RSMo 1978. However, until the passage of § 321.226, RSMo 1980 Supp. (Laws of 1979, S.B. 237, § 1), no law existed which would allow fire protection districts to charge for such services. Section 321.226 provides as follows:
 1. Any fire protection district which is authorized to provide emergency ambulance service within its district may provide such emergency ambulance service outside its district. When providing emergency ambulance service, a fire protection district may assess and collect a fee for such service.
 2. As used in this section "emergency" means a situation resulting from a sudden or unforeseen situation or occurrence that requires immediate action to save life or prevent suffering or disability.
Since the effective date of § 321.226, any fire protection district authorized to provide emergency ambulance service may provide such service both within and without its district, and may assess and collect a fee for providing such service. The statute does not prescribe a particular manner of collection or specify the person from whom the fee is to be received.
Therefore, in answer to questions 1 and 2 of your opinion request, it is our opinion that a fire protection district rendering emergency ambulance service may collect the fee owed by an individual who has received such service directly from an insurance company providing insurance coverage for that individual. In this respect, the fire protection district stands in the same position as any other provider of service to individuals covered by insurance. That is, although the individual is liable for such payment and must be looked to for satisfaction of all charges unpaid, the fire protection district may, if it so chooses, make orderly arrangements for direct payment from the insurance company.
Furthermore, the facts outlined in your questions 3 and 4 would not cause our answer to questions 1 and 2 to be different. Sections 321.225 and 321.620, RSMo 1978, authorize the majority of voters within a fire protection district to approve a proposition to furnish emergency ambulance service and to levy a tax not to exceed fifteen cents on the $100 assessed valuation to be used exclusively to supply funds for the operation of such service. It is important to note that the statutes set an upper limit only; that is, a levy not to exceed fifteen cents on $100 assessed valuation. In addition, the statutes provide that the fire protection district shall exercise the same powers and duties in operating an emergency ambulance service that it does in operating its fire protection service.
Sections 321.240 and 321.610, RSMo 1980 Supp., provide that the board in charge of each fire protection district shall determine the amount of money necessary to be raised each year by taxation which along with other revenues will raise the amount required by the district to pay for its operations. The rate of levy is set accordingly. Therefore, to the extent that fees for emergency ambulance service are collected and available to offset the cost to the district of operating the emergency ambulance service, the yearly levy can be adjusted accordingly, mindful only of the fact that it cannot exceed the maximum of fifteen cents per $100 assessed valuation.
Very truly yours,
 JOHN ASHCROFT Attorney General